**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **VS.** | § | **CRIMINAL ACTION NO. 5:22-CR-822** |
| | § | |
| **JOSE ALONSO SALDANA ALANIZ** | § | |

**OPPOSED MOTION TO SUPPRESS EVIDENCE**

TO THE HONORABLE DIANA SALDAÑA, JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS:

COMES NOW Defendant JOSE ALONSO SALDANA ALANIZ, by and through his attorney MARJORIE A. MEYERS, Federal Public Defender, by Assistant Federal Public Defender, SARA A. MARTINEZ, and pursuant to Rule 41(h) of the Federal Rules of Criminal Procedure and the Fourth Amendment to the Constitution of the United States, the Defendant moves this Honorable Court to suppress any and all evidence acquired by the Government as a result of the illegal search of his efficiency apartment. To support this motion, the accused shows the following:

**I. PROCEDURAL BACKGROUND**

Mr. Saldana Alaniz was indicted on June 28, 2022, for a violation of 18 U.S.C. § 922(g)(5)(A) and 924(a)(2), alleging that he was an alien in possession of ammunition. The Pre-Trial Motions deadline was July 18, 2022 and the Final Pretrial Conference was originally scheduled for August 15, 2022 before the Honorable Magistrate Christopher dos Santos. On August 11, 2022, an Unopposed Motion to Continue the Final Pretrial Conference was filed (Dkt. No. 17), informing the Court that a suppression issue had been identified and more time was

needed to investigate and research the issue prior to filing a motion for leave to file a motion to suppress out of time. The motion was granted and the Final Pretrial Conference was reset to September 12, 2022. On September 8, 2022, an Unopposed Second Motion to Continue the Final Pre-Trial Conference was filed (Dkt. No. 20) and granted to October 11, 2022, as the receipt of additional discovery relevant to the suppression issue was pending. On October 6, 2022, an Unopposed Motion for Leave to File Out of Time Motion to Suppress and an Unopposed Motion to Continue the Final Pretrial Conference was filed (Dkt. No. 22).[1] This Honorable Court granted both motions and set the motions deadline for October 11, 2022, and the Final Pretrial Conference is now currently scheduled for November 7, 2022 at 9:00 a.m. before the Honorable Magistrate Christopher dos Santos.

## II. BACKGROUND

Mr. Saldana Alaniz, an undocumented alien, was arrested on June 1, 2022, after agents discovered ammunition inside his dwelling. Various reports were provided by the Government, and amongst those reports the Defendant does not contest the following:

Prior to the search and seizure at issue occurring, the Webb County Sherriff's Office received third-party information that an individual named "Jose Allan" was stashing approximately 5,000 rounds of 50-caliber ammunition and 300 pounds of marijuana inside an apartment located at ▮▮▮▮ Flores Ave., in Laredo, Texas. The anonymous informant did not know the apartment number but did say it was the apartment with a white metal security door facing the

---

[1] The Motion for Leave was filed for the following reasons: At the time of the pretrial motions deadline, and through no fault of the Defendant, not all evidence relevant to the suppression issue had been discovered. As the case progressed and the first Final Pretrial Conference approached, both parties agreed to evaluate the case further prior to determining if a motion to suppress would and should be filed. Since the passing of the motions deadline, additional reports were provided by the Government, several discussions occurred between AUSA Homero Ramirez and the Undersigned regarding the merits of the suppression issue, and lastly, the Undersigned conducted her own field investigation of the scene, researched the issues, and interviewed a witness to the search.

street. The narcotics division of the Webb County Sherriff's Office (W.C.S.O.) and Drug Enforcement Agency (D.E.A.) thereafter conducted surveillance of the apartment complex. While conducting surveillance, W.C.S.O. Investigator Dana Sarquiz noticed a silver/grey Dodge Stratus leaving the apartment complex. This was apparently "called in," and at approximately 4:53p.m., W.C.S.O. Cpl. Ismael Garcia conducted a traffic stop on the Dodge Stratus and identified the driver as ▊ and the passenger (the Defendant) as "Jose Saldana." An NCIC/TCIC check was conducted on both subjects which returned clear. The driver of the vehicle, ▊, gave consent to search his vehicle which was subsequently checked and cleared. Both the Defendant and ▊ told Cpl. Garcia that they were coming from the store and were heading back to ▊ Flores to Saldana's (the Defendant's) residence.

    Prior to the search and seizure at issue, the reports indicate that in addition to the Defendant being subjected to a traffic stop, two other vehicles leaving the apartment complex were subjected to traffic stops for investigatory purposes. At 5:51 pm, Cpl. Garcia conducted a second motor vehicle stop of a Buick Sedan. The driver, ▊ informed Cpl. Garcia that she was the owner of the apartment complex located at ▊ Flores. At 6:12 pm, an attempt to conduct a traffic stop on a Dodge Charger (which was seen leaving the apartment complex earlier) was unsuccessful as the vehicle evaded the stop.

    According to the reports, after the pursuit several vehicles went in and out of the apartment complex, raising suspicion. As a result, both agencies (W.C.S.O. and D.E.A) decided to approach the apartment complex to conduct a knock and talk where they observed two male subjects, ▊ and ▊ in the parking lot of the apartment complex. Due to the alleged suspicious activity observed during surveillance, both ▊ and ▊ were placed in handcuffs. ▊ told W.C.S.O. Sgt. Michael Gonzalez that his children were inside the

3

apartment alone and Sgt. Gonzalez replied that that they were going to enter his house to get the children and bring them outside. Thereafter, Sgt. Gonzalez and Inv. Sarquiz, along with multiple officers from the SWAT team entered ▇▇▇'s apartment. Of note, the Webb County Incident Report lists over twenty-two (22) W.C.S.O. investigators, deputies, D.E.A. Special Agents and Task Force Officers who were part of the approach at this point in time.

What occurred upon entry into ▇▇▇'s apartment (Apartment No. 1) is thereafter disputed by the Defendant and is contradicted amongst the investigative reports. Upon entry through the front door of ▇▇▇'s apartment, there is a door immediately on the right hand side. This door leads to an efficiency apartment leased by the Defendant. This efficiency consists of one room and its main entryway is through the outside which matches the location given by the informant as "the apartment with a white metal security door facing the street." For purposes of clarity, ▇▇▇'s apartment and the Defendant's apartment had a door connecting both units together with their own respective entryways from the outside.

W.C.S.O. Investigator Dana Sarquiz's report:

According to W.C.S.O. Investigator Dana Sarquiz, ▇▇▇'s "children were [located] inside a closed bedroom without supervision… It was clear to that the kids were OK. Sgt. Gonzalez told ▇▇▇ that [they] would take the kids outside, as there was no adult supervision. Moments later, [Sgt. Gonzalez] received information over the same apartment that the children were in. Therefore, Sgt. Gonzalez asked [▇▇▇] who lived at this residence, and that is when ▇▇▇ stated it was himself, his wife, and his three children. ▇▇▇ then added that he does not have access to the second bedroom … as you enter the front door. ▇▇▇ stated that the bedroom was being rented to someone else and has been in discussions with the landlord so that

4

he can utilize that bedroom for his family. In response, W.C.S.O. Sgt. Gonzalez asked ▇▇▇ who stayed in that room. ▇▇▇ responded 'Flaco' and has seen him a few times because he has fed him before due to 'Flaco' not having any money to purchase food. Sgt. Gonzalez and [another investigator (Rosendo Rodriguez)] also collaborated this information with the landlord, to which he stated 'Jose Cadena' was the one renting the room."

Eventually, after receiving information from a female tenant of the same complex that the Defendant was in her apartment, Sgt Gonzalez, Investigator Sarquiz, Cpl. Garcia, and two other W.C.S.O.'s went to her apartment and located the Defendant who identified himself as "Alonso Alaniz." Cpl. Garcia recognized the Defendant as the person he had stopped earlier, "Jose Saldana," and the landlord identified the Defendant as the tenant staying in the other room inside apartment No.1. (▇▇▇'s apartment). The Defendant thereafter gave his full name, "Jose Alonso Saldana Alaniz."

As the investigations kept progressing, W.C.S.O. Sgt. Gonzalez asked the Defendant where he lived, "to which he stated he stayed in apartment number 1 inside a bedroom." Because the information corroborated with what ▇▇▇ and the landlord had said, Sgt. Gonzalez "then asked [the Defendant] for consent to search his 'bedroom.'" The Defendant thereafter "gave verbal and written consent, and [he] opened the front door to his 'bedroom' with his key." According to Inv. Sarquiz's report, '[i]nside the "bedroom," there was a strong odor of marijuana." After searching they "discovered ammunition boxes and a bundle of marijuana inside the shower located towards the north as you enter the door that faces the street. Due to the high number of live ammunition recovered, the A.T.F. was called in to assist [them] at this location. Of note, Inv. Sarquiz's report made no mention of anyone entering the Defendant's apartment prior to the Defendant giving consent. The Defense anticipates the evidence will show that the Defendant was

5

handcuffed and surrounded by agents when he was asked for consent to search his apartment.

W.C.S.O. Sgt. Michael Gonzalez's report

In contrast, according to Sgt. Gonzalez, upon entering ▇▇▇▇'s apartment he "approached the first door [he] opened it and found a small living area. Sgt. Gonzalez saw another door in which he opened and the door led to the front parking lot where all the other officers and agents were at. That's when Sgt. Gonzalez realized he was in a separate living area that connects through a door to ▇▇▇▇'s apartment. Sgt. Gonzalez then told the officers that were about to follow [him] in to the room to get out of the room because it was a separate living area. Sgt. [Gonzalez] did see a jar with a green leafy substance in plain view on the floor. As Sgt. Gonzalez was walking out of the room [he] realized that Inv. Sarquiz and another deputy had located the kids and that they were OK. [He] told deputies to get out of the apartment and take the kids outside with ▇▇▇▇." Sgt. Gonzalez's report thereafter details the locating and identification of "Flaco," the Defendant in a nearby apartment.

Of note, while Sgt. Gonzalez fails to mention this in his report, the Defendant anticipates that the evidence will show that the door leading to the Defendant's apartment or "bedroom" from inside ▇▇▇▇'s apartment was blocked off by a sofa, and that Sgt. Gonzalez moved the sofa to gain entry into the Defendant's apartment.

ATF Report of Investigation

In contrast, the ATF report of investigation states a different rendition of the events leading up to the search and seizure. Presumably, this information was given to the ATF by the W.C.S.O. officers at the scene. While the W.C.S.O. reports state that ▇▇▇▇ was handcuffed and "told"

that officers were going to go inside to check on his kids, the ATF reports state that ▇ gave consent to the officers to check his apartment. Once inside, "[o]fficers stated that while searching the apartment, [they] noticed a door that was adjacent to another room inside Apt. 1. Officers stated that since they believed that room was part of Apt 1, they proceeded to open the door and observed several metal boxes (military type green boxes). At this moment, officers were told by ▇ that the room as subleased by another subject known as 'Flaco' and that the room was not part of the apartment they were renting… During the investigation, W.C.S.O. officers found out that 'Flaco' was with a female in an apartment upstairs in the [same] complex. W.C.S.O. officers proceeded to the apartment upstairs and found out that 'Flaco' was the same person that was stopped by W.C.S.O. officers earlier (Saldana). W.C.S.O. officers stated that Saldana provided written consent to search his room."

### III. GROUNDS FOR SUPPRESSION

All of the evidence found in this case and Defendant's statements are subject to suppression on several grounds. Mr. Saldana Alaniz asserts that the initial search of his apartment was in violation of the Fourth Amendment to the United States Constitution because (1) the initial search was conducted without consent nor any exception to the warrant requirement, (2) his subsequent consent was not voluntary and did not cure the initial constitutional violation, and (3) all of the statements made by Mr. Saldana-Alaniz are subject to suppression because they were the result of an illegal seizure.

## IV. APPLICABLE LAW

1. **Warrantless Search of Residence**

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Warrantless searches are presumptively unreasonable subject to a "few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971); *Katz v. United States*, 389 U.S. 347, 357 (1967). These exceptions include consent or exigent circumstances. *Rice v ReliaStar Life Ins. Co.,* 770 F.3d 1122, 1132 (5th Cir. 2014).

In determining whether exigent circumstances justify a warrantless entry, courts examine the totality of the circumstances during the period immediately preceding the search. *Kentucky vs. King*, 563 U.S. 452, 472 (2011). When a warrantless search or seizure is conducted, the burden shifts to the government to justify the warrantless search. *United States v. Chavis,* 48 F.3d 871, 872 (5th Cir. 1995).

It is clear from the reports that law enforcement entered Mr. Saldana Alaniz's apartment prior to obtaining his consent and the safety check on ▮▮▮▮▮'s children was not an exigency. Therefore, the initial search of his apartment was in violation of the Fourth Amendment.

2. **The Defendant's Consent did not cure the Fourth Amendment Violation**

Consent provides an exception to the Fourth Amendment's warrant and probable cause requirements. *United States v. Rounds,* 749 F.3d 326, 338 (5th Cir. 2014). When a person gives consent to search, that consent "may, but does not necessarily, dissipate the taint, of a prior Fourth

Amendment violation." *United States. V. Chavez-Villarreal,* 3 F.3d 124, 127 (5th Cir. 1993). The admissibility of the challenged evidence turns on a two-pronged inquiry: (1) whether the consent was voluntarily given; and (2) whether the consent was "an independent act of free will." *Id.* "The first prong focuses on coercion, the second on a causal connection with the constitutional violation." *Id.*

To determine whether a defendant's consent was voluntarily given, the Court considers the following non-exclusive relevant factors: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. *United States v. Olivier-Becerril,* 861 F.2d 424, 426 (5th Cir. 1988).

To determine whether the Defendant's consent was "an independent act of free will, breaking the causal chain between the consent and the constitutional violation," courts consider the following three factors: "(1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." *United States. V. Chavez-Villarreal,* 3 F.3d 124, 128 (5th Cir. 1993). "The burden of showing admissibility rests on the Government." *Id.*

Mr. Saldana-Alaniz's consent was not voluntarily given as he was handcuffed at the time W.C.S.O. deputies asked for and received consent, he was not free to leave, and was not advised of his right to refuse consent. There was a substantial amount of law enforcement officials surrounding the Defendant when he was asked for consent, which arguably could be considered a coercive police procedure.

Furthermore, the Defendant's consent was not "an independent act of free will, breaking the

9

causal chain between the consent and the constitutional violation," as he was arrested minutes after W.C.S.O. Sgt. Gonzalez searched his room without his consent and there were no intervening circumstances between the initial and flagrant search of the Defendant's dwelling and his detention.

## V. REQUEST FOR HEARING

Defendant Jose Alonso Saldana Alaniz requests a hearing.

## VI. DECLARATION OF ISSUES

Pursuant to Local Rule Cr.L.R.12.2 of the Local Rules of the Southern District of Texas, the foregoing motion presents the following issues of fact:

1. Whether entry into the Defendant's dwelling was in violation of the Fourth Amendment as it was without a warrant, without consent, and without any other exception to the warrant requirement.
2. Whether the Defendant's Consent was valid, curing the Fourth Amendment violation.

## VII. CERTIFICATE OF CONFERENCE

On October 6, 2022, the Undersigned conferred with AUSA Homero Ramirez about this motion to which he is opposed.

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Defendant Jose Alonso Saldana Alaniz

asks the Court to grant this Motion and to suppress all evidence and statements made by him, taken in violation of his constitutional rights. The Defendant hereby requests an evidentiary hearing.

        Respectfully submitted,

        MARJORIE A. MEYERS
        Federal Public Defender
        Southern District of Texas
        Texas State Bar No.   14003750
        Southern District of Texas No. 3233

        By: /s/ Sara A. Martinez
        SARA A. MARTINEZ
        Assistant Federal Public Defender
        Texas State Bar Number 24049707
        Southern District of Texas No. 1110640
        1202 Houston Street
        Laredo, Texas 78040-8014
        Telephone:   (956) 753-5313
        Fax:             (956) 753-5317

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2022, a copy of the foregoing motion was served by Notice of Electronic filing and to Assistant United States Attorney Homero-Ramirez.

        /S/ Sara A. Martinez
        SARA A. MARTINEZ
        Assistant Federal Public Defender