UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 5:22-0822 |
| | § | |
| JOSE ALONSO SALDANA ALANIZ | § | |

## RESPONSE TO MOTION TO SUPPRESS EVIDENCE

TO THE HONORABLE DIANA SALDAÑA, JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS:

The United States of America, by and through Jennifer B. Lowery, the United States Attorney for the Southern District of Texas, and Jose Homero Ramirez, Assistant United Assistant United States Attorney, and herein opposes the defendant's Motion to Suppress on the grounds that: 1) the law enforcement agents and officers entered his residence in violation of his Fourth Amendment rights, 2) without a justifiable exception to the Exclusionary Rule, 3) the subsequent consent provided by defendant was tainted, and 4) all evidence seized and statements obtained are otherwise inadmissible under a Fruit of the Poisonous Tree analysis.

## BACKGROUND

Jose Alonso Saldana Alaniz (hereinafter, "the defendant") was indicted in Count One of Criminal No. 5:22-CR-00822. Count One alleges that on or about June 1, 2022, the defendant, knowing that he was an alien illegally or unlawfully in the United States, knowingly possessed at least one round of .50 caliber ammunition or one round of 5.56-millimeter ammunition. On October 6, 2022, the defendant filed his Motion to Suppress. In his motion, the defendant contends that the initial search of his apartment was conducted without his consent or any

1

exception to the warrant requirement, that his subsequent consent was not voluntary and did not cure the initial search of his apartment, and all subsequent statements he provide should be suppressed as being subsequent to an illegal seizure.

## EXPECTED EVIDENCE AT HEARING

Webb County Sheriff's Office (hereinafter "WCSO") Narcotics Division Sergeant Michael Gonzalez is expected to present testimony as follows.

On June 1, 2022, the Webb County Sheriff's Department received information that large quantities of ammunition were being stored an apartment within a complex at an address at the 3100 block of Flores Ave., in Laredo, Texas. Gonzalez other members of his division with assistance from WCSO Patrol Division and DEA conducted surveillance at the apartment complex in the afternoon for about two hours until approaching the parking lot of the small apartment complex shortly after 6:11 p.m., when a decision was made by WCSO and DEA to approach the apartment complex. Gonzalez made contact with two males were standing together in the parking lot smoking marijuana in the open. One was not wearing a shirt and the other was holding a personal use quantity of marijuana in a baggie. Both persons were handcuffed. Gonzalez asked the men where they lived and learned that the shirtless man lived in one apartment on the ground floor, but his six-month-old twins and a slightly older child were alone in the apartment. No one else was with them.

Gonzalez is expected to testify that he felt it necessary to conduct a welfare check on the children, assure their safety, and bring them out the apartment with four or five SWAT members.

Gonzalez entered the apartment which the shirtless man identified as his, Apartment-A[1], and entered with five other SWAT members. Gonzalez saw two closed doors on opposite sides of the apartment. Since the shirtless man had not provided any additional details concerning the number of bedrooms, Gonzalez believed each door led to a different bedroom. He directed some members of his team to proceed to the door on the far left, while he and three other members went towards the door that was immediately to his right as he entered the apartment. He moved a sofa blocking the door. The door appeared to have locks but was not locked. Gonzalez opened the door, which swung inward into the shirtless man's apartment. Gonzalez walked in alone while other members waited behind. Gonzalez walked towards another door at the far end. It opened into the apartment complex's parking lot. Gonzalez realized that this was not a bedroom belonging to Apartment-A but could be someone else's living area. He instructed the officers that had started to follow him to get out of the room. On his way out he saw a small jar with green leafy substance. Gonzalez is expected to testify that he did not see any of the ammunition or the large quantity of marijuana what was later discovered after the defendant provided consent. As Gonzalez had arrived at the door that was initially blocked by the sofa, he saw another WCSO Investigator who had been outside of the apartment with a member of his team walking out with the three children.

Gonzalez then went outside of Apartment-A to speak to the shirtless man. Gonzalez rearranged the shirtless man's handcuffs to face front and they walked into Apartment-A. The shirtless man and his wife told Gonzalez and other personnel that they did not own the efficiency apartment but had blocked it off with a sofa because the locks didn't work well, and the

---

[1] For privacy purposes, the actual apartment's number will not be identified.

landlord's tenant, known as "Flaco" (later identified as the defendant), would sometimes walk into the shirtless man's apartment.

Another investigator spoke to the landlord who confirmed that the efficiency was rented to another person and was not part of the shirtless man's lease.

Gonzalez is expected to testify that during the meeting with the shirtless man, a female tenant, from another apartment told other WCSO deputies that they may want to speak to a man in her apartment and led the WCSO to her apartment and opened the door. The defendant hid behind the front door when the deputies entered. After coming out from behind the door, the defendant provided a false name of "A.A.," and a false date of birth. Other WCSO personnel identified him. At some point during the interaction, the landlord also identified the defendant as the efficiency apartment's tenant. At that point it is unclear if the defendant was handcuffed with his hands in front for officer safety but was permitted to sit back on the sofa and also walk about the room where he had been when the officers encountered him. The entire encounter and conversation which concluded with the defendant providing written consent to search his efficiency apartment lasted between 10 and 15 minutes. Prior to providing written consent the defendant volunteered consent several times.

Written consent was provided at 7:24 p.m. The defendant led Gonzalez and others to the front door of his apartment, gave his the key to Gonzalez, and instructed them to enter his apartment, where the ammunition and marijuana were found in the shower of his apartment. Although the defendant provided his apartment key to Gonzalez, Gonzalez made it a point to have the defendant always walk by Gonzalez's side up to and including the unlocking of the front door and entry into the defendant's apartment, in the event the defendant wished to revoke the previously provided consent to search the efficiency apartment.

At 8:32 p.m., the shirtless man, at his own request, provided a voluntary statement to WCSO in which he stated that the room in which the seized items were found was not leased to him and his wife but attached to their apartment. He did so because he did not want to be associated with the items found there. Shortly thereafter, Gonzalez was informed by a Border Patrol liaison that the defendant was an undocumented alien illegally in the United States.

In an October 12, 2022, during a telephone interview with ATF agents, however, the shirtless man stated that while he was outside his apartment, outside "with a friend…smoking a 'joint'", he was detained by officers and told the officers that he heard one of his sons crying. At that point, the officers conducted a welfare check on his children.

Later that evening, the defendant waived his *Miranda* rights and provided a video and audio recorded statement.

## AUTHORITIES AND ARGUMENT

The defendant's motion to suppress his statement should be denied.

The WCSO officers first entry was occasioned by the exigent circumstances exception warrant requirement. The second entry was independently secured by defendant's consent. Audio and video statements provided by the defendant were made after *Miranda* warnings were provided.

<u>The Exigent Circumstances Exception</u>

Under the exigent circumstances exception to the warrant requirement, the Supreme Court has recognized that police officers are not required to obtain a warrant where "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City v. Stuart*, 547 U.S. 398, (2006) (quoting Mincey v. Arizona, 437 U.S. 385 (1978)). "Accordingly, law enforcement

5

officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* In determining whether exigent circumstances justify a warrantless entry, courts examine the totality of the circumstances during the period immediately preceding the search. *Kentucky vs. King*, 563 U.S. 452, 472 (2011). The significant factors at play here, prior to the search, are as follows: 1) the shirtless man was outside of his apartment smoking marijuana; 2) he told Gonzalez and other WCSO personnel that his three children, two infant six-month old twins, and a not-much older child were in the apartment alone; and 3) a child was heard crying from his apartment; and 4) the child was the man's son. The objective inferences that Gonzalez could draw from these facts are that a child or children occupying the apartment was or were injured or needed protection from imminent injury or both situations existed simultaneously. As a result, the initial warrantless entry to search the apartment for the children was justified.

Defendant's Consent to Search his Apartment

When courts review a search justified by consent, there are four distinct issues. *United States v. Dilley*, 480 F.3d 747, 748 (5th Cir. 2007). First, the government must show, based on the totality of the circumstances, that the defendant did consent to a search by a preponderance of the evidence. *Id*. at 748-49. Second, once the government has demonstrated consent, it must also demonstrate by the totality of the circumstances that consent was voluntarily granted. *Id*. at 749 (citing *Schneckloth v. Bustamante*, 412 U.S. 218 (1973)). If the government demonstrates that consent was given voluntarily, two final questions must be addressed: 1) whether the search was within the scope of the consent granted, and 2) whether the consenting individual had authority to consent. *Id*. Scope and authority are determined by the reasonable-officer standard rather than a totality of the circumstances standard. *Id*.

6

In considering whether consent was voluntary, courts in the Fifth Circuit consider six factors, "all of which are relevant, but no one of which is dispositive or controlling." *United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002). These factors include 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedure; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse to consent; 5) the defendant's education and intelligence; 6) the defendant's belief that no incriminating evidence will be found. *Id*. at 436, n.21.

In the present case, Gonzalez sought and received consent from the defendant to search his apartment for ammunition. This was within the scope of the consent given by the defendant and he, as the lessee, had the necessary authority to give such consent. What remains to be determined is whether the consent was voluntarily given.

When the defendant provided consent, the defendant was lawfully seized by Gonzalez and three officers, but the officers, however, are unsure if the defendant was initially handcuffed. The officers maintain that the defendant was not threatened or coerced in any manner, nor were weapons drawn. According to the officers, the defendant maintained a helpful attitude and repeated several times that he confidently encouraged them to search his apartment and to search him because the defendant had not done anything wrong. In addition, Gonzalez remembers that the defendant was handcuffed after he signed a written consent to search form. The defendant spoke Spanish. The consent form was written in Spanish. The consent form includes the following statements (in Spanish) above the date, time, and signature spaces:

> **I understand that I have the right to refuse give consent to search the premises described above and the right to refuse to sign this consent to search form.**
>
> **I also declare that no promises, threats; physical or mental force or coercion of any kind was imposed on me to make me give this consent for the above premises or to sign this form.**

Therefore, defendant's verbal and written consent to search his apartment was voluntarily given, based on the totality of the circumstances.

WHEREFORE, PREMISES CONSIDERED, the United States requests that Defendant's motion to suppress be DENIED in all things.

RESPECTFULLY SUBMITTED on November 7, 2022.

                                    Respectfully submitted,

                                    JENNIFER B. LOWERY
                                  UNITED STATES ATTORNEY

                              By:     /s/ *Jose Homero Ramirez*
                                    JOSE HOMERO RAMIREZ
                                    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2022, a true and correct copy of Government's Response to Defendant's Motion to Suppress was transmitted by email to counsel of record, and electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to all Counsel of Record.

                                    /s/ *Jose Homero Ramirez*
                                    JOSE HOMERO RAMIREZ
                                    Assistant United States Attorney